DANIEL E. MARTYN, JR. (State Bar No. 138122)
JOHN E. MORAN (State Bar No. 94179)
DIANA S. PONCE-GOMEZ (State Bar No. 187136)
DANNER & MARTYN, LLP
100 E. Thousand Oaks Blvd., Suite 244
Thousand Oaks, California 91360
Telephone:  (805) 777-8700
Facsimile:  (805) 778-0736

Attorneys for Plaintiff
DIRECTV, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DIRECTV, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DENNIS LEE; SHANNON KESWICK; BLAKE TITUS; CHRIS OLSON,<br><br>    Defendants. | CASE NO.:<br><br>**COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND FOR INJUNCTIVE RELIEF** |

Plaintiff DIRECTV, Inc. ("DIRECTV") hereby complains as follows with respect to its claims arising under federal question jurisdiction 28 U.S.C. §§ 1331 and 1338(a).

## NATURE OF THIS CASE

1.  DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States.  DIRECTV's television programming currently includes major cable networks, studio movies and special events programming, as well as a variety of sports and other special interest programming.  DIRECTV, a California company, has invested more than $1.25 billion to develop its direct broadcast satellite system.

2.  DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming.  DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-

1.

1  view basis only. Each customer is required to obtain a DIRECTV Access Card and other system
2  hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of
3  the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*,
4  unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to
5  purchase from DIRECTV.

6      3.   On May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local
7  law enforcement, at the mail shipping facility used by several major sources of pirate technologies
8  including, but not limited to, White Viper Technologies ("White Viper"). During and subsequent to
9  the raids, DIRECTV came into possession of a substantial body of sales records, shipping records,
10 email communications, credit card receipts and other records, including but not limited to, additional
11 records obtained from White Viper on September 14, 2001. Those records evidence each defendant's
12 purchase of illegal Pirate Access Devices (as defined herein). In reliance upon those records and other
13 information, and upon information and belief, DIRECTV sets forth the allegations in this complaint.

14     4.   On or about December 11, 2001, state and local law enforcement officers, with the
15 assistance of DIRECTV personnel, executed search warrants upon Chris and Kathy Schultz, doing
16 business as Mountain Electronics, aka "Mountainelectronics.net." The Schultz' were physically
17 located in Arizona, but, due to the expansive reach of internet sales, Mountain Electronics was able to
18 conduct business nationwide and across many countries. Mountain Electronics' business enterprise
19 focused on distributing electronic devices primarily designed for the surreptitious interception of
20 satellite communications broadcast by DIRECTV.

21     5.   On or about April 18, 2002, a second raid was conducted upon the Schultz' and
22 Mountain Electronics, resulting in the arrest of the Schultz' and the seizure of additional records and
23 equipment.

24     6.   The raids revealed information related to Mountain Electronics and its customers.
25 DIRECTV obtained various business records evidencing the ongoing illegitimate enterprise, including
26 orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card
27 receipts and customer lists. Each record confirmed the existence of a distribution source for the
28 country-wide transmission of devices primarily designed for the unauthorized interception of

DIRECTV's Satellite Programming. Moreover, the records plainly evidenced that Mountain Electronic provided its services and devices to actively program and reprogram DIRECTV Access Cards at the request of customers eager to continue illegal access to DIRECTV's television programming without payment to DIRECTV.

7. Mountain Electronics customers ordinarily placed orders over a website operated by the Schultz', named "Mountainelectronics.net." Pertinently, the business records obtained in the raid evidence Defendant DENNIS LEE's purchases of Pirate Access Devices from Mountain Electronics, and in reliance on those records and other information, and upon information and belief, DIRECTV brings forth the allegations in this Complaint.

8. Each defendant is a resident of this District. DIRECTV alleges that each defendant has purchased and used illegally modified DIRECTV Access Cards and other devices ("Pirate Access Devices") that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV.

9. Each defendant's activities violate federal telecommunication and wiretapping laws and common law. Specifically, each defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and the Electronic Communications Privacy Act (Federal Wiretap Laws), 18 U.S.C. §§ 2510-2521. As a result of each defendant's decision to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against each defendant's continued possession and/or use of Pirate Access Devices.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 47 U.S.C. § 605(e)(3)(A) and 18 U.S.C. § 2520(a) because the claims in this action arise under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and the Electronic Communications Privacy Act (Federal Wiretap Laws), 18 U.S.C. §§ 2510-2521.

11. This Court may exercise supplemental jurisdiction pursuant 28 U.S.C. § 1367(a) over the state law claims asserted herein.

///

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because each defendant is a resident of this district and is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

13. Assignment of this action to the San Francisco Division of the United States District Court for the Northern District of California is proper pursuant to Civil Local Rule 3-2(c) and Civil Local Rule 3-2(e) because the events which give rise to the claims in this action occurred in the counties of Contra Costa, Alameda, and Sonoma.

## PARTIES

14. Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the State of California. DIRECTV has significant interests in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

15. Defendant DENNIS LEE is a resident of El Cerrito, California. Upon information and belief, beginning in or about June 2000, Defendant DENNIS LEE purchased one or more Pirate Access Devices from White Viper and Mountain Electronics. Defendant DENNIS LEE placed each order by using interstate or foreign wire facilities, and received Defendant's orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

(a) On or about June 27, 2000, Defendant DENNIS LEE purchased two (2) Pirate Access Devices, consisting of a printed circuit board device called a "Wildthing 2 Clone Unlooper" and a programmer primarily designed to illegally modify DIRECTV Access Cards called a "Viper Reader/Writer," from White Viper. The devices were shipped to Defendant DENNIS LEE at Defendant's business address in El Cerrito, California.

(b) On or about March 19, 2001, Defendant DENNIS LEE purchased three (3) Pirate Access Devices, each called a "DCB 2.3," consisting of a printed circuit board device known as a "Bootloader with Atmel Chip," from Mountain Electronics. The devices were shipped to Defendant DENNIS LEE at Defendant's address in El Cerrito, California.

///

Complaint For Compensatory, Statutory And Other Damages, And For Injunctive Relief

16.     Defendant SHANNON KESWICK is a resident of Fremont, California. Upon information and belief, beginning in or about August 2000, Defendant SHANNON KESWICK purchased one or more Pirate Access Devices from White Viper. Defendant SHANNON KESWICK placed each order by using interstate or foreign wire facilities, and received Defendant's orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a)     On or about August 1, 2000, Defendant SHANNON KESWICK purchased two (2) Pirate Access Devices, consisting of a printed circuit board device called a "Wildthing 2 Clone Unlooper" and a programmer primarily designed to illegally modify DIRECTV Access Cards called a "Viper Reader/Writer," from White Viper. The devices were shipped to Defendant's husband at his business address in Hayward, California.

17.     Defendant BLAKE TITUS is a resident of Rohnert Park, California. Upon information and belief, beginning in or about September 2000, Defendant BLAKE TITUS purchased one or more Pirate Access Devices from White Viper. Defendant BLAKE TITUS placed each order by using interstate or foreign wire facilities, and received Defendant's orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a)     On or about September 25, 2000, Defendant BLAKE TITUS purchased two (2) Pirate Access Devices, consisting of a programmer primarily designed to illegally modify DIRECTV Access Cards called a "Viper Reader/Writer" and a printed circuit board device called a "Whiteviper Super Unlooper," from White Viper. The devices were shipped to Defendant BLAKE TITUS at Defendant's address in Rohnert Park, California.

18.     Defendant CHRIS OLSON is a resident of Fremont, California. Upon information and belief, beginning in or about September, 2000, CHRIS OLSON purchased one or more Pirate Access Devices from White Viper. Defendant CHRIS OLSON placed each order by using interstate or foreign wire facilities, and received Defendant's orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

///

(a) On or about September 24, 2000, Defendant CHRIS OLSON purchased two (2) Pirate Access Devices, consisting of a combination of a programmer primarily designed to illegally modify DIRECTV Access Cards called a "Viper Reader/Writer" and a printed circuit board device called a "Wildthing Unlooper," from White Viper. The devices were shipped to Defendant CHRIS OLSON at Defendant's address in Fremont, California.

## FIRST CAUSE OF ACTION

## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS

## IN VIOLATION OF 47 U.S.C. § 605(a)

## (AGAINST ALL DEFENDANTS)

19. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 18 as if set forth fully herein.

20. Each defendant has received and assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

21. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

22. Each defendant knew or should have known that receiving and assisting third persons in receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, each defendant will continue to violate 47 U.S.C. § 605(a).

///

///

///

///

## SECOND CAUSE OF ACTION

## UNAUTHORIZED INTERCEPTION OF ELECTRONIC

## COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511(1)(a)

## (AGAINST ALL DEFENDANTS)

23. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 22 as if set forth fully herein.

24. By using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, each defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. § 2511(1)(a).

25. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

26. Each defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. § 2511(1)(a).

## THIRD CAUSE OF ACTION

## POSSESSION OF PIRATE ACCESS DEVICES

## IN VIOLATION OF 18 U.S.C. § 2512(1)(b)

## (AGAINST ALL DEFENDANTS)

27. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 26 as if set forth fully herein.

28. Each defendant has used Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, with intent to avoid payment of the lawful charges

therefor, by trick, artifice, deception, use of a device or decoder, and other fraudulent means, without authority from DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

29. Each defendant has possessed and used Pirate Access Devices, with intent to avoid payment to DIRECTV of the lawful charges for its programming, that are designed in whole or in part to receive subscription television services offered for sale by DIRECTV, without authority of DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

30. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

31. Each defendant knew or should have known that possessing Pirate Access Devices was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. § 2512(1)(b).

## FOURTH CAUSE OF ACTION
## CONVERSION
## (AGAINST ALL DEFENDANTS)

32. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 31 as if set forth fully herein.

33. By possessing and using Pirate Access Devices, each defendant has unlawfully converted to their own use and benefit property belonging to DIRECTV.

34. Such conversion was done intentionally and wrongfully by each defendant to deprive DIRECTV of its proprietary interests and for each defendant's direct benefit and advantage.

35. As a direct and proximate result of each defendant's unlawful acts, DIRECTV has suffered and continues to suffer damages, including lost subscription and pay-per-view revenues and other valuable consideration.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1) Find the defendants' conduct in possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a) and (e)(4), 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b), and California common law, and further find that defendants' violations were willful, malicious or for a tortious or illegal purpose;

(2) In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin and restrain each defendant, and persons controlled directly and indirectly by each defendant, from possessing or using Pirate Access Devices, and further order each defendant to surrender all Pirate Access Devices;

(3) In the event of a default, an award of statutory damages of $10,000 for each Pirate Access Device possessed and used in violation of 18 U.S.C. § 2520(c)(2), and a further award of DIRECTV's reasonable attorneys' fees and costs of suit;

(4) In the event of trial, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2), or (b) compensatory and punitive damages in accordance with 605(e)(3)(C)(i)(I), 18 U.S.C. § 2520(c)(2), and California common law; and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

(5) For such additional relief as the Court deems just and equitable.

Dated: September ____, 2003                              DANNER & MARTYN, LLP


By:_____
Diana S. Ponce-Gomez
Attorneys for Plaintiff DIRECTV, INC.